UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

TOMMY MEJIA,                           :
          Plaintiff,                   :
                                       :
     v.                                :     Case No. 3:21cv1222 (MPS)
                                       :
OFFICER KURTZENACKER, ET AL.,          :
          Defendants.                  :

## INITIAL REVIEW ORDER

The plaintiff, Tommy Mejia, has filed an amended civil rights complaint pursuant to 42

U.S.C. § 1983 against Correctional Officer Kurtzenacker, Disciplinary Hearing Investigator

Bomster, Disciplinary Hearing Officers Brown and Vicenty, Disciplinary Hearing Advisor

Tramontano, Unit Counselor Jones, Lieutenant Schweigoff, and Correctional Officers Perkins

and Bayramoglu.  *See* ECF No. 10.  For the reasons set forth below, the Court will dismiss the

amended complaint in part.

## I.      Standard of Review

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints

against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous,

malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary

relief from a defendant who is immune from such relief."  *Id.*  In undertaking this review, the

Court is obligated to "construe" complaints "liberally and interpret[] [them] to raise the strongest

arguments that they suggest."  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)

(internal quotation marks and citation omitted).

Although detailed allegations are not required under Rule 8(a) of the Federal Rules of

Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility

when a plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A

complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of

a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet

the facial plausibility standard. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

## II.    Factual Allegations

On March 4, 2021, prison officials transferred the plaintiff from MacDougall-Walker

Correctional Institution to Brooklyn Correctional Institution in Brooklyn, Connecticut. *See* ECF

No. 10 ¶ 31. On March 11, 2021, between 8:30 a.m. and 9:00 a.m., prison officials moved the

plaintiff and all other inmates housed in A-Dorm to the gym. *Id.* ¶ 11. When the plaintiff

arrived at the gym, there was no chair for him to sit in. *Id.* The plaintiff asked Correctional

Officer Kurtzenacker to get him a chair. *Id.* Kurtzenacker responded: "what's here is here. I am

not getting anymore chairs for anyone, that's not my problem." *Id.* ¶ 12. The plaintiff asked

where he was supposed to sit down. *Id.* ¶ 13. Kurtzenacker responded: "relax bro. You want a

chair? F***." *Id.* ¶ 14. Because the plaintiff "noticed an attitude," he asked Kurtzenacker to

call a lieutenant. *Id.* ¶ 15. Kurtzenacker responded: "Okay, okay, you want a chair" and then

escorted the plaintiff to a cell in the Admitting and Processing ("A&P") area. *Id.* ¶¶ 16-17.

Before leaving the cell, Kurktzenacker, took the plaintiff's shoelaces, his wristwatch, and

his face mask. *Id.* ¶ 17. As he left the cell, Kurtzenacker told the plaintiff to "enjoy [his]

f***ing chair" and then handed the plaintiff a replacement mask. *Id.* ¶¶ 18, 20.

Later that morning, Lieutenant Schweigoff visited the plaintiff.  *Id.* ¶ 21.  The plaintiff explained what had happened and that he had seen extra chairs in the cafeteria and school area. *Id.*  Lieutenant Schweigoff indicated that he would check with Officer Kurtzenacker regarding the matter.  *Id.* ¶ 10.

The plaintiff remained in the cell in the A&P area from approximately 8:40 a.m. until 1:00 p.m.  At 1:00 p.m., Kurtzenacker brought the plaintiff a lunch tray and called him a derogatory name.  *Id.* ¶¶ 23-24.  Kurtzenacker informed the plaintiff that officers would escort him back to his dorm unless he had any other problems to discuss.  *Id.* ¶ 24.  The plaintiff indicated that he had no further problems to discuss.  *Id.* ¶ 25.

When the plaintiff arrived in A-Dorm, Perkins called him to the front desk and showed him "a pile of items" including beard trimmers.  *Id.* ¶ 26.  The plaintiff did not recognize any of the items except the beard trimmers.  *Id.*  Perkins issued the plaintiff a disciplinary report for possessing the items that were displayed on the desk.  *Id.*

After the plaintiff walked back to his living area, he noticed that his beard trimmers were missing.  *Id.* ¶ 27.  The plaintiff returned to the front desk to determine whether the beard trimmers that he had noticed earlier belonged to him.  *Id.* ¶ 28.  Perkins returned the beard trimmers to the plaintiff.  *Id.*  The plaintiff observed some photographs that were face down on the desk and suspected that they might be photographs of his family.  *Id.* ¶ 29.  Perkins showed the photographs to the plaintiff, but he did not recognize them.  *Id.*  The plaintiff then asked Perkins whether he had searched any other inmate's property in A-Dorm.  *Id.* ¶ 32.  Perkins stated that it was a random search and that he had only done what he had been told to do.  *Id.* ¶ 33.

3

After the plaintiff returned to his living area, other inmates informed him that Perkins had not searched their living areas. *Id.* ¶ 30. The plaintiff then filed a grievance about the incidents that had occurred earlier that day. *Id.* ¶ 32.

On March 12, 2021, Disciplinary Investigator Bomster called the plaintiff to his office to discuss the disciplinary report that Perkins had issued to him the day before. *Id.* ¶¶ 34-36. Officer Kurtzenacker stood at the door of Investigator Bomster's office during the interview. *Id.* ¶ 35. Investigator Bomster indicated that if the plaintiff signed the disciplinary report acknowledging his guilt, he would only receive forty-five days loss of commissary privileges and that if the plaintiff did not sign the report, he would receive ninety days loss of commissary privileges and other penalties. *Id.* ¶¶ 36, 38. The plaintiff stated that he would not sign the disciplinary report even after Bomster showed him the evidence that would be used against him at a disciplinary hearing. *Id.* ¶¶ 37, 40–42. Investigator Bomster then escorted the plaintiff to a cell in the A&P area. *Id.* ¶ 43.

A short time later, Perkins approached the plaintiff's cell and threatened to search the plaintiff's living area and to confiscate the plaintiff's beard trimmers again if he did not sign the disciplinary report. *Id.* ¶ 44. The plaintiff indicated that he was not going to sign the report. *Id.* ¶ 45. Perkins reiterated his threat to search the plaintiff's living area and also threatened to issue the plaintiff a disciplinary report in connection with the search. *Id.* ¶ 46.

Disciplinary Hearing Officer Brown visited the plaintiff and recommended that he sign the disciplinary report because she was going to find him guilty of the charge "no matter what." *Id.* ¶¶ 46-47. The plaintiff did not respond to Brown. *Id.* ¶ 48. Brown suggested that if the plaintiff refused to sign the disciplinary report, officers would search his living area again. *Id.* ¶

4

49. Hearing Officer Brown and Investigator Bomster then left the plaintiff's cell and an officer escorted the plaintiff back to A-Dorm. *Id.*

Within minutes of the plaintiff's arrival in his living area, Unit Counselor Jones called the plaintiff to the front desk and asked him to choose a disciplinary hearing advisor. *Id.* ¶ 50. The plaintiff chose Tramontano. *Id.* ¶ 51. Approximately, forty-five minutes later, the plaintiff filed a grievance about the conduct of Officer Kurtzenacker, Lieutenant Schweigoff, Investigator Bomster, Counselor Jones, Hearing Officer Brown, and Perkins. *Id.* ¶ 49.

During the period from March 12, 2021 to April 12, 2021, Hearing Advisor Tramontano met with the plaintiff twice. *Id.* ¶¶ 54-64. The plaintiff asked Advisor Tramontano to provide him with all documents pertaining to the issuance of the disciplinary report, including any rules, regulations, and directives that might apply, and to contact three witnesses who could testify on his behalf at the disciplinary hearing. *Id.* Advisor Tramontano subsequently provided the plaintiff with administrative directives but no other documents. *Id.*

On or about April 7, 2021, officers transferred the plaintiff to D-Dorm. *Id.* ¶ 69. On April 13, 2021, Investigator Bomster called the plaintiff to the front desk and asked the plaintiff to follow him to a unit counselor's office. *Id.* ¶ 65. When they reached the office, Bomster indicated that the grievances that the plaintiff had filed would not resolve the matter, ripped up one of the grievances, and remarked that a hearing officer would likely find him guilty of the disciplinary charge and impose sanctions of ninety days loss of commissary privileges and a loss of good time credit. *Id.* ¶ 66. The plaintiff did not respond to Investigator Bomster. *Id.* ¶ 67. Bomster then swore at the plaintiff, referred to him using an ethnic slur, and ordered him to leave the office. *Id.*

On April 14, 2021, an officer escorted the plaintiff to the disciplinary hearing.  *Id.* ¶ 69.
When the plaintiff arrived at the hearing room, he noticed that none of his witnesses were
present.  *Id.*  Disciplinary Hearing Officer Vicenty informed the plaintiff that he would be
permitted to present his defense after Investigator Bomster and Advisor Tramontano presented
their findings.  *Id.* ¶¶ 71, 73.  After Bomster and Tramontano gave their statements to Hearing
Officer Vicenty, the plaintiff completed two sentences of his statement in support of his defense
to the disciplinary charge.  *Id.* ¶¶ 74-75.  At that point, Hearing Officer Vicenty interrupted the
plaintiff and stated that she had heard enough and would not permit the plaintiff to speak further.
*Id.* ¶¶ 74-76.  Hearing Officer Vicenty found the plaintiff guilty of the disciplinary charge and
imposed sanctions of ninety days loss of commissary privileges and ten days loss of good time
credit.  *Id.* ¶ 78.

**III.    Discussion**

The plaintiff asserts a First Amendment retaliation claim, an Eighth Amendment
deliberate indifference claim, and Fifth and Fourteenth Amendment due process claims.  *Id.* at
29.  For relief, he seeks monetary damages.  *Id.* at 30.

**A.    Official Capacity Claims**

To the extent that the plaintiff seeks monetary damages from the defendants in their
official capacities for violating his federal constitutional rights, those claims for relief are barred
by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh
Amendment, which protects the state from suits for monetary relief, also protects state officials
sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section
1983 does not override a state's Eleventh Amendment immunity).  Accordingly, the claims

seeking compensatory and punitive damages for violations of the plaintiff's federal constitutional rights by the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

**B.      First Amendment - Retaliation**

The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation omitted).  Retaliation claims "stated in wholly conclusory terms" are insufficient.  *Id.* (citations omitted).  To plead a First Amendment retaliation claim, an inmate must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against [him or her], and (3) that there was a causal connection between the protected speech and the adverse action."  *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (citation omitted).

The plaintiff asserts four retaliation claims.  The first claim is based on Officer Kurtzenacker's March 11, 2021 decision to place the plaintiff in a cell in the A&P area and to confiscate items of his personal property; the second claim is based on Perkins' March 11, 2021 search of the plaintiff's cell, confiscation of items from his cell, and issuance of a disciplinary report to him; the third claim is based on the threats made by Perkins on March 12, 2021 to search the plaintiff's cell a second time and to issue him a second disciplinary report; and the fourth claim is based on the failure of Investigator Bomster, Advisor Tramontano, Hearing Officers Vicenty and Brown, and Unit Counselor Jones to provide the plaintiff with procedural

due process prior to and during the disciplinary hearing held on April 14, 2021.

### 1.    Placement in A&P Cell and Confiscation of Property

In support of the first retaliation claim, the plaintiff alleges that when he asked Officer Kurtzenacker to call a lieutenant to the gym to address the fact that a chair had not been provided to him, Kurtzenacker retaliated against him by placing him in a cell in the A&P area and confiscating his shoelaces, wristwatch, and face mask.  Thus, this retaliation claim arises from a verbal complaint made by the plaintiff.

"Although some district courts have found that verbal complaints may be protected for the purposes of a First Amendment retaliation claim, the Second Circuit has yet to articulate a bright line rule regarding the constitutionally protected oral speech by an inmate." *Cosby v. McDonald*, No. 3:20-CV-432(MPS), 2020 WL 5026550, at *6 (D. Conn. Aug. 25, 2020) (internal quotation marks and citation omitted).  In determining whether an inmate's oral complaint might constitute protected speech, the district courts have distinguished between verbal complaints about the conduct of correctional staff members or conditions of confinement and verbal arguments or confrontations between a prisoner and correctional staff member and have concluded that arguments and verbal confrontations do not rise to the level of protected speech.  *See Miller v. Lamont*, No. 3:20-CV-872(MPS), 2020 WL 6136300, at *9 (D. Conn. Oct. 19, 2020) (collecting cases).

Although the plaintiff may have intended to complain to a lieutenant about Officer Kurtzenacker's refusal to provide him with a chair, the plaintiff's discussion with Officer Kurtzenacker regarding his need for a chair constituted at most a verbal confrontation or

argument.  This argument does not rise to the level of speech protected by the First Amendment.

*See, e.g., Hinton v. Pearson*, No. 3:21-CV-863 (MPS), 2021 WL 4521994, at *4 (D. Conn. Oct.

4, 2021) (concluding "speech at issue" - inmate's request that officer call a lieutenant after he

refused to comply with the officer's order to enter his cell – did "not constitute protected speech

to support a retaliation claim" because it was "more in the nature of a confrontation or

argument").  The first retaliation claim asserted against Officer Kurtzenacker is dismissed

pursuant to 28 U.S.C. § 1915A(b)(1).

### 2.      Cell Search, Confiscation of Property, Disciplinary Report, Threats

In support of his second retaliation claim, the plaintiff alleges that during his confinement

in a cell in the A&P area from 8:40 a.m. to 1:00 p.m. on March 11, 2021, Perkins searched his

living area in A-Dorm and confiscated his beard trimmers.  When the plaintiff arrived back in the

dorm, Perkins issued him a disciplinary report for items confiscated from his living area.  The

plaintiff contends that Perkins did not search any other inmate's living area in A-Dorm.  Later

that day, the plaintiff filed a grievance about the incidents that had occurred earlier.  In support

of the third retaliation claim, the plaintiff alleges that on March 12, 2021, Perkins visited him and

threatened to search his cell and to issue him a second disciplinary report if he did not sign the

first report.

The filing of an inmate grievance constitutes a protected First Amendment activity and

satisfies the first element of the second and third retaliation claim.  *See Dolan*, 794 F.3d at 294

("It is well established that retaliation against a prisoner for pursuing a grievance violates the

right to petition [the] government for redress of grievances guaranteed by the First and

Fourteenth Amendments and is actionable under § 1983.") (internal quotation marks and

citations omitted).  With regard to the second retaliation claim, the plaintiff describes the adverse conduct as the search of his cell by Perkins, the confiscation of items of his personal property during the search, and the issuance of the disciplinary report by Perkins for items confiscated during the search.  These allegations are sufficient to meet the second element of a First Amendment retaliation claim.  *See, e.g.*, *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) ("An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under § 1983.") (citation omitted); *Keesh v. Goord,* No. 04–CV–271, 2007 WL 2903682, at *8 (W.D.N.Y. Oct. 1, 2007) ("[T]he confiscation or destruction of property taken at the time of ... searches may" constitute an adverse action).

The plaintiff alleges that he filed a grievance on September 11, 2021 after the incidents had occurred earlier that day.  ECF No. 10 ¶ 30.  Because the plaintiff did not file the grievance until after the Perkins searched his cell, confiscated items of his personal property, and issued him the disciplinary report, no causal connection existed between the protected activity and the adverse action.  Thus, the Court dismisses the second retaliation claim asserted against Perkins. *See* 28 U.S.C. § 1915A(b)(1).

In support of his third retaliation claim, the plaintiff alleges that on March 12, 2021, Perkins visited him and threatened to search his cell and issue him a new disciplinary report in connection with the search if he did not sign the first disciplinary report issued on March 11, 2021.  Verbal threats may constitute adverse conduct in the context of a First Amendment retaliation claim if the threats are sufficiently specific and direct.  *See, e.g.*, *Ford v. Palmer*, 539 F. App'x 5, 6 (2d Cir. 2013) (summary order) (finding that a verbal threat

10

constituted adverse action where a corrections officer threatened to poison the plaintiff

in retaliation for filing grievances); *Quezada v. Roy*, No. 14 CIV. 4056 CM, 2015 WL 5970355,

at \*21–23 (S.D.N.Y. Oct. 13, 2015) ("The line between de minimis verbal harassment

and retaliatory adverse action . . . hinge[s] on the specificity and seriousness of the words used;

'The less direct and specific a threat, the less likely it will deter an inmate from exercising his

First Amendment rights.'")(quoting *Mateo v. Fischer,* 682 F.Supp.2d 423, 434 (S.D.N.Y.2010)

(collecting cases)).  The plaintiff's allegations that Perkins made a specific threat to search his

cell a second time and to issue him another disciplinary report in response to the grievance that

he filed the day before meet the adverse conduct and causal connection elements of a retaliation

claim.  *See, e.g.*, *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) ("A plaintiff can establish a

causal connection that suggests retaliation by showing that protected activity was close in time to

the adverse action.") (citations omitted).  The third retaliation claim will proceed against Perkins

in his individual capacity.

### 3.      Disciplinary Hearing

In support of his fourth retaliation claim, the plaintiff alleges that forty-five minutes after

he spoke to Counselor Jones on March 12, 2021, he returned to his housing area and filed a

grievance regarding the incidents that had occurred earlier that day and the day before.  ECF No.

8 ¶ 49.  He asserts that after a hearing held on April 14, 2021, Hearing Officer Vicenty found

him guilty of the disciplinary charge and imposed sanctions including a loss of commissary

privileges and good time credit.  The filing of the grievance on March 12, 2021, constitutes a

protected First Amendment activity and satisfies the first element of a retaliation claim.

*See Dolan*, 794 F.3d at 294.

11

### a.     Counselor Jones and Hearing Officer Brown

To the extent that the plaintiff asserts retaliation claims against Counselor Jones and Hearing Officer Brown, he does not allege that he had any contact with either defendant after he filed the March 12, 2021 grievance or that either defendant presided over the disciplinary hearing held on April 14, 2021 or was involved in the decision to find him guilty of the disciplinary charge or to impose sanctions against him.  Thus, he has not asserted facts to meet the adverse conduct or causal connection elements of a retaliation claim.  The retaliation claims arising from the March 12, 2021 grievance as asserted against Counselor Jones and Disciplinary Hearing Officer Brown are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### b.     Advisor Tramontano and Hearing Officer Vicenty

The plaintiff alleges that prior to and during the hearing held on April 14, 2021, Advisor Tramontano failed to provide him with effective assistance in preparing for the disciplinary hearing and Hearing Officer Vicenty denied him an opportunity to present his defense at the hearing, found him guilty of the charge, and imposed multiple sanctions.  The filing of grievances on March 11, and 12, 2021 meet the first element of a retaliation claim.  The allegations that Tramontano provided the plaintiff with ineffective assistance prior to the hearing and that Vicenty failed to afford the plaintiff due process during the hearing and found him guilty and imposed sanctions after the hearing meet the adverse conduct element of a First Amendment claim.

The plaintiff does not allege that either the March 11, 2021 grievance or the March 12, 2021 grievance included complaints about the actions of Tramontano or Vicenty.  Although it is difficult to establish a prison official's retaliation for grievances filed against other prison

employees, the temporal proximity between the filing of the March 2021 grievances and the April 2021 disciplinary hearing is sufficient to meet the causal connection element of a retaliation claim.  *See, e.g.*, *Brandon*, 938 F.3d at 40 ("One way a plaintiff an establish a causal connection is by showing that protected activity was close in time to the adverse action.") (internal quotation marks and citation omitted).  The First Amendment retaliation claim arising from the filing of the March 11, and 12, 2021 grievances as asserted against Advisor Tramontano and Hearing Officer Vicenty will proceed for further development of the record.

### c.      Investigator Bomster

The plaintiff suggests that the March 12, 2021 grievance included complaints about the conduct of Investigator Bomster.  In addition, during his meeting with the plaintiff on April 13, 2021, Bomster mentioned both the March 11, 2021 and the March 12, 2021 grievances and attempted to pressure the plaintiff to plead guilty to the disciplinary charge.  At the disciplinary hearing held on April 14, 2021, Bomster recommended a finding of guilt as to the charged misconduct and sanctions of loss of commissary privileges and good time credit.  The disciplinary hearing officer agreed with Bomster's recommendations and found the plaintiff guilty and imposed sanctions.  These allegations suggest a temporal proximity between the adverse conduct and the filing of the March 2021 grievances.  Additionally, the comments made by Bomster make clear that he was aware that the plaintiff had file the grievances as of April 13, 2021.  The Court concludes that the causal connection element has been met as to this claim of retaliation asserted against Investigator Bomster.  The Court will permit the First Amendment retaliation claim arising from the filing of the March 2021 grievances as asserted against Investigator Bomster to proceed.

C.        **Eighth Amendment**

Although the Constitution does not require "comfortable" prison conditions, it does not

permit prison officials to maintain conditions which inflict "unnecessary and wanton pain" or

which result in the "serious deprivation of basic human needs ... or the minimal civilized

measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  To state a claim

of deliberate indifference to health or safety due to unconstitutional conditions of confinement,

an inmate must demonstrate both an objective and a subjective element. To meet the objective

element, the inmate must allege that he was incarcerated under a condition or a combination of

conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human

need[]" or posed "a substantial risk of serious harm" to his health or safety. *Farmer v.*

*Brennan,* 511 U.S. 825, 834 (1994); *Rhodes*, 452 U.S. at 347.  The Supreme Court has identified

the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical

care, warmth, safety, sanitary living conditions, and exercise.  *See Wilson v. Seiter*, 501 U.S. 294,

304 (1991); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989);

*Rhodes,* 452 U.S. at 348.

To meet the subjective element, an inmate must allege that the defendants possessed

culpable intent; that is, the officials knew that he or she faced a "substantial risk" to his or her

health or safety and "disregard[ed] that risk by failing to take reasonable measures to abate it."

*Farmer*, 511 U.S. at 847.  Thus, an allegation of "mere negligen[t]" conduct is insufficient.  *Id.* at

835.

The plaintiff alleges that in conjunction with his placement in a cell in the A&P area on

March 11, 2021, Kurtzenacker confiscated several items from him including his shoelaces, his

wristwatch, and his protective face mask.  Before exiting the cell, Kurtzenacker offered the plaintiff a replacement face mask, allegedly referred to by Kurtzenacker as a "dirty ass mask." The plaintiff also alleges that on March 11, 2021, Officer Kurtzenacker did not deliver his lunch tray to him until 1:00 p.m. and called him a derogatory name at that time.

### 1.    Lunch, Watch, Shoelaces, and Verbal Remarks

The plaintiff asserts no facts to suggest that the alleged confiscation of his watch and shoelaces for approximately four hours or the alleged delay in the delivery of his lunch by Officer Kurzenacker constituted serious deprivations of a basic human need or a life's necessity or posed a risk of substantial harm to his health.  Accordingly, the Eighth Amendment claims pertaining to these deprivations by Officer Kurtzenacker are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

It is well-established that allegations of verbal harassment, insulting comments, or threats, in and of themselves, do not state a claim under the Eighth Amendment.  *See, e.g.*, *Kravitz v. Fischer*, No. 9:12-CV-1011 LEK/TWD, 2014 WL 4199245, at *14 (N.D.N.Y. Aug. 22, 2014) ("Verbal threats, name-calling, intimidation, and harassment alone, even when they pertain to race and religion, do not give rise to a First or Eighth Amendment claim.") (citing, *inter alia*, *Cole v. Fischer,* 379 F. App'x 40, 43 (2d Cir. 2010) (summary order) (explaining that verbal harassments including racial epithets, derogatory comments about Muslims, and mocking plaintiff about wearing an adult diaper, absent physical injury, are not constitutional violations cognizable under § 1983)); *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) (holding that name-calling without "any appreciable injury" did not violate inmate's constitutional rights).  The plaintiff does not allege that Officer Kurtzenacker's racial epithet was

accompanied by any physical harm or abuse.  Thus, the allegation of verbal harassment asserted against Officer Kurtzenacker does not rise to the level of an Eighth Amendment violation and is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### 2.    Protection from COVID-19

It is undisputed that COVID-19 "is a highly dangerous disease that poses a significant risk of severe illness and death[.]" *Martinez-Brooks v. Easter*, No. 3:20-cv-00569 (MPS), 2020 WL 2405350, at *21 (D. Conn. 2020) (finding prisoners' claims during a COVID-19 outbreak satisfied the objective component for a deliberate indifference claim).  Although the plaintiff alleges that prior to exiting the A&P cell, Kurtzenacker offered him a replacement face mask, he does not indicate whether accepted or wore the mask.  Nor is it clear whether the condition of the "dirty" mask made it less effective in protecting the plaintiff from contracting COVID-19.  The allegations suggest that this condition lasted, at most, a few hours, and do not indicate whether the plaintiff was exposed to other persons during these few hours.  Without more, the Court finds that this allegation does not suggest a serious risk of harm to the plaintiff's health.  This claim is dismissed without prejudice.

### E.    Fifth and Fourteenth Amendments – Due Process

The plaintiff includes Fifth and Fourteenth Amendment due process claims in the second count of the amended complaint and a "Liberty Interest" claim in the sixth count of the amended complaint.  ECF No. 10 at 29.  He contends that Disciplinary Hearing Investigator Bomster, Disciplinary Hearing Officer Vicenty, Disciplinary Hearing Advisor Tramontano, and Unit Counselor Jones deprived him of procedural due process prior to and during the hearing held to dispose of the disciplinary report issued to him by Perkins on March 11, 2021.

16

The Fifth Amendment applies to the federal government, not to cities, towns, or the states. *See Dusenbery v. United States,* 534 U.S. 161, 167 (2002) (holding Fifth Amendment's Due Process Clause protects citizens against only federal government actors, not State officials). Because the defendants in this action are all state employees, the Fifth Amendment is inapplicable to the due process claim asserted against them. The Fifth Amendment due process claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

To state a claim for violation of procedural due process under the Fourteenth Amendment in connection with sanctions imposed for a disciplinary infraction, an inmate must show that he had a protected liberty interest and, if he had such an interest, that he was deprived of that interest without being afforded due process of law. *See Sandin v. Connor*, 515 U.S. 472 (1995). In *Sandin*, the Supreme Court explained that in the prison setting, liberty interests protected by Due Process will be "limited to freedom from restraint which while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. The Court held that Inmate "Connor's discipline in segregated confinement [for 30 days] did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 486. Thus, an inmate has a protected liberty interest only if the disciplinary sanctions caused him to suffer an "atypical and significant hardship" in comparison to "the ordinary incidents of prison life." *Id.*

The plaintiff alleges that Perkins issued him a false disciplinary report, Counselor Jones informed him that he could choose an advisor and appointed Tramontano as his advisor pursuant to his request, Advisor Tramontano failed to assist him in securing documents and witnesses to

17

support his defense of the disciplinary charge, Investigator Bomster failed to undertake an adequate investigation into the disciplinary charge or assign him an advisor, and during the hearing, Officer Vicenty refused to permit him to call inmate witnesses or to complete his oral statement in defense of the disciplinary charge.

In *Peralta v. Vasquez*, 467 F.3d 98 (2d Cir. 2006), the Second Circuit considered an inmate's challenge to a prison official's finding of his guilt as to a disciplinary charge and the imposition of sanctions pursuant to that finding that affected the duration of the inmate's confinement as well as sanctions that affected only his conditions of confinement. The court held that "a prisoner subject to such mixed sanctions can proceed separately, under § 1983, with a challenge to the sanctions affecting his conditions of confinement without satisfying the favorable termination rule of [*Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)], *but ... he can only do so if he is willing to forgo once and for all any challenge to any sanctions that affect the duration of his confinement.*" 467 F.3d at 104 (emphasis in original). The Second Circuit remanded the case and instructed the district court to ascertain whether the prisoner had formally agreed to waive all claims challenging the duration of his imprisonment. *See id.* at 106.

The plaintiff alleges that Hearing Officer Vicenty found him guilty of the disciplinary charge and imposed a sanction that affected a condition of his confinement—loss of commissary privileges—and a sanction that affected the duration of his confinement – loss of good time credit. Good time is "[a] time credit for good behavior" and a credit is "[a] unit of time that shortens the remaining term of imprisonment." *See* State of Connecticut Department of Correction Administrative Directive 4.2(3)(I) and (S) (effective 8/28/12); *available at* https://portal.ct.gov/DOC/AD/AD-Chapter-4.

18

If the plaintiff was to prevail on his challenge to the disciplinary report issued to him on March 11, 2021, the guilty finding would be called into question. Because the plaintiff has not demonstrated that the disposition of the disciplinary charge has been invalidated, the favorable termination rule of *Heck* bars the due process claims arising from the disposition of the disciplinary charge unless he "abandon[s], not just now, but also in any future proceeding, any claims he may have with respect to the duration of his confinement that arise out of the proceeding he is attacking in [this] § 1983 suit." *Id.* at 104.

Accordingly, the plaintiff shall advise the Court in writing, within twenty days of the filing date of this Order, whether he waives *for all time* all claims in this action relating to the disciplinary sanction affecting the duration of his confinement (*i.e.*, the loss of 10 days of good time credit) in order to proceed with his Fourteenth Amendment procedural due process claim challenging the issuance of the disciplinary report by Perkins on March 11, 2021, the inquiries made by Investigator Bomster, the appointment of an advisor by Unit Counselor Jones, the alleged ineffective assistance provided by Advisor Tramontano, and the alleged refusal of Hearing Officer Vicenty to permit him to call witnesses and make a complete statement in his defense at the hearing.

### F.    Fourteenth Amendment – Equal Protection

Although the plaintiff does not include an equal protection claim in his list of claims for relief, he asserts facts in support of an equal protection claim in the body of the amended complaint.  He alleges that Officer Kurtzenacker treated him differently than the other inmates from A-Dorm who were also placed in the gym on March 11, 2021.

The Equal Protection Clause of the Fourteenth Amendment does not mandate identical

treatment for each individual or group of individuals.  Instead, it requires that similarly situated persons be treated the same.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985).

To state a plausible equal protection claim, a plaintiff must allege facts showing that: (1) he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).

Absent allegations to support "class-based" discrimination, a plaintiff may state a violation of the Equal Protection Clause under the "class of one" theory.  To state a valid class-of-one claim, a plaintiff must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  In the Second Circuit, a plausible class of one claim requires a class-of-one plaintiff to "show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted).

The plaintiff alleges that Officer Kurtzenacker treated him differently than all the other inmates in his housing unit who were escorted to the gym on March 11, 2021 by ensuring that every other inmate had a chair to sit on, except him.  When the plaintiff complained that he did not have a chair, Kurtzenacker placed the plaintiff in a cell in the A&P area for approximately four hours and confiscated his shoelaces, watch, and personal face mask.  The plaintiff contends

that there was no rational basis for this difference in treatment.  The plaintiff asserts further that when Lieutenant Schweigoff came to the cell in the A&P area and listened to the circumstances under which Officer Kurtzenacker had placed him in the cell, Lieutenant Schweigoff left him in the cell.  Thus, he also treated the plaintiff differently for no apparent rational reason.  The plaintiff's allegations also suggest that the difference in treatment may have been due to his ethnicity or race.  During his confinement in the cell in the admitting and processing area, Kurtzenacker referred to the plaintiff using an ethnic slur.  *See* ECF No. 1 ¶ 24.

Thus, the plaintiff has plausibly alleged that Officer Kurtzenacker treated him differently or discriminated against him because of his membership in a protected class or based on some suspect classification or other impermissible characteristic and has also plausibly alleged a class of one equal protection claim against Lieutenant Schweigoff and Officer Kurtzenacker.  The Court will permit these Fourteenth Amendment equal protection claims to proceed against Lieutenant Schweigoff and Officer Kurtzenacker in their individual capacities

### G.      Violations of Administrative Directives

The plaintiff generally asserts that the defendants violated State of Connecticut Department of Correction Administrative Directives 2.17, Employee Conduct; 6.7, Searches Conducted in Correctional Facilities, and 9.5, Code of Discipline.  ECF No. 8 at 27.  An allegation that a prison official did not adhere to a state law, regulation or prison directive or policy does not rise to the level of a violation of a federally or constitutionally protected right. *See Holland v. City of New York*, 197 F. Supp. 3d 529, 548–49 (S.D.N.Y. 2016) ("An alleged violation of a prison policy, directive, or regulation, in and of itself, does not give rise to a federal claim, because '[f]ederal constitutional standards rather than state law define the

requirements of procedural due process.'") (quoting *Russell v. Coughlin,* 910 F.2d 75, 78 n.1 (2d Cir. 1990) and citing, *inter alia*, *Doe v. Conn. Dep't of Child & Youth Servs.,* 911 F.2d 868, 869 (2d Cir.1990) ("[A] violation of state law neither gives [plaintiffs] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim.")); *Patterson v. Coughlin,* 761 F.2d 886, 891 (2d Cir.1985) ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983.")).

The allegations that the defendants failed to comply with Administrative Directives 2.17, 6.7, and 9.5 do not state a claim under section 1983 and are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## H.   Claims Asserted Against Bayramoglu

The plaintiff lists Bayramoglu as a defendant in the caption and in the description of parties on the first two pages of the amended complaint.  He states that Bayramoglu works for the Department of Correction.  *See* ECF No. 10 at 3.  He does not otherwise identify Bayramoglu's job title or otherwise mention Bayramoglu in the body of the amended complaint. Absent any facts regarding the conduct of Bayramoglu, the plaintiff has not alleged a plausible claim that Bayramoglu violated his federally or constitutionally protected rights.  The amended complaint is dismissed as to all claims asserted against Bayramoglu.  *See* 28 U.S.C. § 1915A(b)(1).

## ORDERS

In accordance with the foregoing analysis, the Court enters the following orders:

**(1)**   The claims seeking monetary damages from the defendants in their official capacities for violating the plaintiff's federal constitutional rights are **DISMISSED** pursuant to

28 U.S.C. § 1915A(b)(2).  The Fifth Amendment claim; the claim that all defendants failed to comply with Department of Correction administrative directives; all other claims asserted against Bayramoglu; the First Amendment claim that Officer Kurtzenacker placed the plaintiff in a cell in the A&P area for four hours and confiscated items of his personal property in retaliation for their verbal argument about the provision of a chair to the plaintiff; the First Amendment claim that Perkins' searched the plaintiff's cell, confiscated of items of the plaintiff's personal property, and issued the plaintiff a disciplinary report in retaliation for the March 11, 2021 grievance; the First Amendment claim that Counselor Jones and Disciplinary Hearing Officer Brown violated the plaintiff's due process rights in retaliation for the March 12, 2021 grievance; and the Eighth Amendment claims that Officer Kurtzenacker confiscated the plaintiff's shoelaces and watch in conjunction with his placement in a cell in the A&P area, delayed the delivery of the plaintiff's lunch later that day, called him a derogatory name, and gave him a dirty replacement mask are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).  Thus, all claims asserted against defendants Brown and Bayramoglu have been **DISMISSED**.

The First Amendment claim arising from Perkins' threats to search the plaintiff's cell a second time and to issue him another disciplinary report in retaliation for the filing of the March 11, 2021 grievance will **PROCEED** against Perkins in his individual capacity; the First Amendment claim arising from the procedural due process violations by Advisor Tramontano and Hearing Officer Vicenty in retaliation for the filing of the March 11, and 12, 2021 grievances will **PROCEED** against Tramontano and Vicenty in their individual capacities; the First Amendment claim arising from Disciplinary Investigator Bomster's attempt to pressure the plaintiff to plead guilty to the disciplinary charge and to recommend a finding of guilt as to the

charge and the imposition of sanctions in retaliation for the filing of the March 11, and 12, 2021 grievances will **PROCEED** against Bomster in his individual capacity; and the Fourteenth Amendment equal protection claims will **PROCEED** against Lieutenant Schweigoff and Officer Kurtzenacker in their individual capacities.

**(2)** **If the plaintiff seeks to pursue the Fourteenth Amendment procedural due process claim asserted against Perkins, Investigator Bomster, Counselor Jones, Advisor Tramontano, and Hearing Officer Vicenty that challenges the mixed sanctions imposed as a result of the finding of guilt as to the March 11, 2021 disciplinary report, he must advise the Court in writing within twenty (20) days whether he waives for all time all claims in this action relating to disciplinary sanctions affecting the duration of this confinement (*i.e.*, the loss of good time credit) in order to proceed with his claims relating to the disciplinary sanction that affected a condition of his confinement.  The plaintiff's failure to file the Notice within the required time will be deemed to constitute his refusal to waive those claims and will result in dismissal of this Fourteenth Amendment procedural due process claim.**  If the plaintiff chooses to file this Notice, the Court will then review the allegations in support of the Fourteenth Amendment procedural due process claim, including the disciplinary sanction that affected a condition of his confinement, to determine whether the claim is plausible.

**(3)** Within twenty-one (21) days of this Order, the Clerk shall verify the current work addresses of the following defendants: Lieutenant Schweigoff, Officer Kurtzenacker, Disciplinary Investigator Bomster, Disciplinary Advisor Tramontano and Hearing Officer Vicenty and mail a copy of the amended complaint, this order, and a waiver of service of process request packet to each defendant in his individual capacity at his confirmed address.  On the

thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of each request.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4)      Defendants Schweigoff, Kurtzenacker, Bomster, Tramontano, and Vicenty shall file their response to the amended complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any additional defenses permitted by the Federal Rules.

(5)      Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the Court.

(6)      All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

(7)      If the plaintiff changes his address at any time during the litigation of this case, he MUST notify the Court.  Failure to do so can result in the dismissal of the case.  The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  If the plaintiff has more than one pending case, he should indicate all case numbers in the notification of change of address. The plaintiff should also inform the attorney for the defendants of his new address.

(8)      The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court.  The plaintiff is advised that the Program may be used only to file documents

with the Court.  Local Court Rule 5(f) provides that discovery requests are not to be filed with the Court.  Therefore, discovery requests must be served on defendants' counsel by regular mail.

**(9)**     The Clerk shall send a courtesy copy of the amended complaint and this order to the Connecticut Attorney General and to the DOC Legal Affairs Unit.

**(10)**    The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which will be sent to the parties by the Clerk.

SO ORDERED at Hartford, Connecticut this 3rd day of January, 2022.

_/s/_____
Michael P. Shea
United States District Judge