UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TOMMY MEJIA,<br><br>    *Plaintiff*,<br><br>v.<br><br>OFFICER KURTZENACKER, et al.,<br><br>    *Defendant*s. | No. 3:21-cv-1222 (MPS) |

**ORDER DENYING PLAINTIFF LEAVE TO FILE AMENDED COMPLAINT**

    The plaintiff, Tommy Mejia, has filed a second amended complaint in this civil rights action. The defendants object to the new complaint to the extent that it raises any claims other than those which survived this Court's Initial Review Order. As will be explained, plaintiff's proposed complaint does not *effectually* add any parties to this action or raise any new claims against existing defendants. Accordingly, this Court denies plaintiff leave to amend the currently operative complaint.

**Standard of Review**

    A party may amend its complaint with either the other party's consent or the court's leave. Fed. R. Civ. Pro. 15(a)(2). Leave from the court "shall be freely given when justice so requires." *Id.* However, district courts have "discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metropolitan Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002).

    An amended complaint is "futile" when its claims "could not withstand a motion to dismiss filed pursuant to Rule 12(b)(6)." *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2002). To survive a motion to dismiss, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**Background**

On September 14, 2021, plaintiff filed a civil rights complaint under 42 U.S.C. § 1983. Compl., ECF No. 1. Plaintiff subsequently amended his complaint, as a matter of right, on November 10, 2021. Am. Compl., ECF No. 10; see also, Fed. R. Civ. Pro. 15(a)(1). Plaintiff's amended complaint named nine defendants—Correctional Officers Kurtzenacker, Perkins and Bayramoglu, Disciplinary Hearing Officers Brown and Vincenty, Disciplinary Hearing Investigator Bomser, Disciplinary Hearing Advisor Tramontano, Unit Counselor Jones, and Lieutenant Schweigoff—and alleges violations of his First, Fifth, Eighth, and Fourteenth Amendment rights. ECF No. 10 at 1-28.

The facts alleged in plaintiff's initial amended complaint are summarized in this Court's January 3, 2022, Initial Review Order (IRO). Initial Review Order, ECF No. 11 at 2-6. In its initial review, this Court permitted plaintiff to proceed with First Amendment retaliation claims against defendants Perkins, Tramontano, Vicenty, and Bomster, and Fourteenth Amendment equal protection claims against defendants Schweigoff and Kurtzenacker. *Id.* at 23-24. This Court also permitted plaintiff to proceed with Fourteenth Amendment procedural due process claims against defendants Perkins, Bomster, Jones, Tramontano, and Vincenty, on the condition that plaintiff forever waive his right to proceed with an aspect of this claim taking issue with the loss of good time credit. *Id.* at 24. Defendants Brown and Bayramoglu were dismissed as parties to this action. *Id.* at 23.

On April 28, 2022, Plaintiff moved for leave to file an amended complaint. Mot. for Leave to File Am. Compl., ECF No. 32. This Court denied leave because the proposed complaint would have resulted in an inadvertent dismissal of all defendants currently named as a party to this action. *See* Order, ECF No. 35. This Court permitted plaintiff to refile a motion for leave after appropriately modifying his proposed complaint. *Id.*

On May 20, 2022, plaintiff filed a proposed second amended complaint. Second Am. Compl., ECF No. 36. This Court subsequently ordered defendants to file any objections. Order, ECF No. 37. Defendants then objected to any modification of the currently operative complaint, except to the extent that the newly proposed complaint sought to revise claims which survived initial review. ECF No. 40 at 1.

The factual allegations contained within Plaintiff's newly proposed complaint are broadly similar to those noted in the currently operative complaint. However, plaintiff does revive claims and parties previously dismissed from this action. ECF No. 36, at 15-17. And plaintiff endeavors to name eight entirely new defendants to this action – Commissioner Quiros, Warden Cotta, Warden Barone, Warden Reis, Correctional Officer Torres, Counselor Ferrera, Captain Faucher, and Administrative Remedy Coordinator Collins. *Id.* at 2-6.

Beyond those causes of action asserted in plaintiff's currently operative complaint, the newly proposed complaint alleges violations of his rights as protected by Article 6 of the U.S. Constitution, and its Fourth, Fifth (Double Jeopardy Clause), Seventh and Ninth Amendments. *Id.* at 15-17. In addition, plaintiff contends that defendants are in breach of contract. *Id.*

**Factual Allegations of Proposed Second Amended Complaint**[1]

On the morning of March 11, 2021, prison officials at Brooklyn Correctional Institution moved the plaintiff, along with other inmates, to a facility gym. *Id.*, ¶ 18. There, inmates were ordered to sit. *Id.* Correctional officers provided all inmates, except plaintiff, with a chair. *Id.*, ¶ 19.

When plaintiff asked Officer Kurtzenacker for a chair in which to sit, Officer Kurtzenacker refused to get one. *Id.*, ¶¶ 20-23. This notwithstanding the fact that many chairs were stacked in the vicinity and could have easily been retrieved. *Id.*, ¶ 24. Rather than get a chair, Officer Kurtzenacker told plaintiff to sit on the floor. *Id.*, ¶ 25. Undeterred, plaintiff asked that Officer Kurtzenacker summon his supervisor. *Id.* Officer Kurtzenacker then escorted plaintiff to a segregation cell. *Id.*, ¶ 26. There, plaintiff's watch and shoelaces were confiscated, and he was made to wait for several hours. *Id.*

Eventually, plaintiff spoke to Officer Kurtzenacker's supervisor, Lieutenant Schweigoff, and explained, from his point of view, what had happened. *Id.*, ¶ 27. After conferring with Officer Kurtzenacker, Lieutenant Schweigoff permitted plaintiff to return to his housing unit. *Id.*, ¶¶ 27-28.

Upon arriving at the housing unit, plaintiff learned that officers had searched his cell while he was gone. *Id.*, ¶ 29. Correctional Officer Perkins then summoned plaintiff to account for a "pile of trash" purportedly discovered within his cell. *Id.*, ¶ 30. Officer Perkins informed plaintiff that the pile was contraband, and that he would be preparing a disciplinary report. *Id.*

---

[1] A recap of the currently operative complaint is provided in this Court's IRO. *See* ECF No. 11.

Following his conversation with Officer Perkins, plaintiff met with Counselors Jones and Ferrera. *Id.*, ¶ 31. Counselor Jones asked plaintiff to select an advocate to represent him in disciplinary proceedings. *Id.*, ¶ 32. Plaintiff chose Advisor Tramontano. *Id.*, ¶ 33.

Counselor Jones advised plaintiff that there "were witnesses against him," and that it would be in his best interests to admit guilt in disciplinary proceedings. *Id.*, ¶ 34. Nonetheless, plaintiff took his case to a hearing. *Id.*, ¶ 35.

On March 12, 2021, Officer Kurtzenacker escorted plaintiff to meet with Investigator Bomster and Officer Perkins. *Id.*, ¶¶ 41-42.  Although Investigator Bomster and Officer Perkins threatened to write plaintiff up for a new disciplinary infraction unless he admitted his guilt in his currently pending disciplinary case, plaintiff maintained his innocence. *Id.*, ¶ 41.

Plaintiff also spoke to Lieutenant Brown on March 12, 2021. *Id.*, ¶ 43. The proposed complaint does not specify what the two discussed. *Id.*

On many occasions preceding his disciplinary hearing, plaintiff requested prison officials to preserve video evidence. *Id.*, ¶ 39. Captain Foucher and Warden Cotta responded to these requests, but not to plaintiff's satisfaction. *Id.*, ¶ 39, 52. Eventually, plaintiff was able to secure preservation of all the video evidence that he desired to use in his defense. *Id.*, ¶ 44.

At his disciplinary hearing, Advisor Tramontano declined to speak on plaintiff's behalf. *Id.*, ¶ 35. And plaintiff, himself, was not permitted to present evidence or argument in his defense. *Id*. Chaplain Bayramoglu, Investigator Bomser, and Officer Kurtzenacker were called as witnesses against him. *Id*. Ultimately, plaintiff was adjudicated to have been in possession of contraband and sanctioned with a 90-day loss of commissary privileges and a forfeiture of good time credit against his sentence. *Id.*, ¶ 36. The complaint does not specify which officers adjudicated the case.

At some indeterminate point following disciplinary proceedings, plaintiff was transferred from Brooklyn to a more restrictive correctional facility – Cheshire Correctional Institution. *Id.*, ¶ 38. Of note though, the proposed complaint contains no allegation that this transfer was retaliatory.

Plaintiff filed many administrative grievances related to the incidents described above. *Id.*, ¶ 45. However, these grievances were all denied (in plaintiff's view unreasonably). *Id.* Plaintiff also sought redress by writing to Commissioner Quiros and other high-ranking prison officials. *Id.*, ¶¶ 48-49, 51. But he received no responses. *Id.*

Following the filing of his initial complaint in this case, plaintiff asserts that Correctional Officer Torres delayed his personal receipt of court filings. *Id.*, ¶ 52. Plaintiff has written to Warden Reis about this issue. *Id.*, ¶ 53. But the warden has not yet responded to plaintiff's satisfaction. *Id.*

**Discussion**

Through the currently operative complaint, plaintiff has been permitted to proceed with First Amendment retaliation claims against defendants Perkins, Tramontano, Vicenty, and Bomster, Fourteenth Amendment equal protection claims against defendants Schweigoff and Kurtzenacker, and (conditionally) Fourteenth Amendment procedural due process claims against defendants Perkins, Bomster, Jones, Tramontano, and Vincenty. ECF No. 11, 23-24. In its IRO, this Court explained why plaintiff has not presented viable Eighth Amendment Claims against defendants and explained its reasons for limiting First and Fourteenth Amendment causes of action. *Id.*, at 7-22. The rationale supporting those rulings applies with equal, or greater, force to the claims that plaintiff alleges in his proposed complaint.[2]

---

[2] This order focuses on explaining why plaintiff cannot *benefit* from the filing of his proposed complaint (by proceeding with additional causes of action against additional defendants). But it also bears noting that the

This Court now endeavors to explain why plaintiff's newly alleged causes of action cannot proceed past pleading. Because plaintiff's proposed complaint futilely endeavors to add causes of action to this case, this Court will deny plaintiff leave to amend the currently operative complaint.

### A. Newly Added Causes of Action

#### 1. Article Six Claims

In his proposed complaint, plaintiff contends that defendants have violated rights afforded to him by Article Six of the United States Constitution. ECF No. 36, ¶¶ 54-59. Article Six is comprised of several topically unrelated clauses. While none of these clauses are obviously implicated by plaintiff's factual allegations, defendants suggest, and this Court agrees, that plaintiff is most likely pleading a violation of the Supremacy Clause. ECF No. 40 at 5.

The Supremacy Clause of the U.S. Constitution primarily "instructs courts [on] what to do when state and federal law clash." *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 325 (2015). Setting aside the question of how the Supremacy Clause relates to plaintiff's allegations, the U.S. Supreme Court has held that it "does not confer a [private] right of action" to litigants. *Id.* at 326. Thus, plaintiff cannot establish a viable Article Six claim in this § 1983 action.

#### 2. Fourth Amendment Claims

Plaintiff contends that Officer Torres and Warden Reis violated his Fourth Amendment rights by delaying his access to court filings made within this case. ECF No. 36, ¶ 59. The Fourth Amendment protects the public from governmental searches and seizures which offend

---

proposed complaint, if accepted, could cause plaintiff prejudice. Because some specific factual allegations included in the current complaint are not included in plaintiff's amended complaint, the proposed complaint is generally less accommodating of the First and Fourteenth Amendment claims that have survived initial review.

reasonable expectations of privacy. *Carpenter v. U.S.*, 138 S.Ct. 2206, 2213 (2018). As a convicted prisoner, plaintiff has an uphill battle in terms of establishing any reasonable expectation to privacy. *See Willis v. Artuz*, 301 F.3d 65, 69 (2d Cir. 2002) ("One of the incidents of confinement for a convict is the loss of privacy"). But even more problematic to his claim, Officer Torres and Warden Reis did not search or seize property by neglecting to forward plaintiff's legal filings. Without an actual search or seizure, there can be no violation of the Fourth Amendment. *See U.S. v. Jacobsen*, 466 U.S. 109, 113 (1984) (The Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures.'") Thus, plaintiff cannot establish his alleged Fourth Amendment violation.

### 3. Double Jeopardy Claims

Plaintiff contends that Officer Torres and Warden Reis also violated the Fifth Amendment's Double Jeopardy Clause by delaying his access to court filings made within this civil case. ECF No. 36. ¶ 17. However, the Double Jeopardy Clause "provides that no person may be [criminally] tried more than once 'for the same offence.'" *Currier v. Virgina*, 138 S.Ct. 2144, 2149 (2018). Since Officer Torres and Warden Reis have not prosecuted plaintiff in a criminal case, they cannot possibly have violated his Double Jeopardy rights.

### 4. Seventh Amendment Claims

Plaintiff also purports to raise claims against defendants under the Seventh Amendment. ECF No. 36, ¶¶ 54-57. Defendants respond that an alleged Seventh Amendment violation can never support a finding of liability through § 1983. ECF No. 40 at 5. And, as a practical matter, this Court agrees.[3]

---

[3] This Court need not decide whether it is literally impossible for a state actor to violate a prisoner's Seventh Amendment rights. It suffices for this Court to note that such a violation, if possible, would be extremely unusual.

The Seventh Amendment preserves "the right to trial by jury" for certain cases brought in federal court. U.S. Const. amend. VII. Since the *federal* judiciary determines the extent to which a litigant in *federal* court may try his or her case before a jury, *see e.g., Messa v. Goord*, 652 F.3d 305 (2d Cir. 2011), persons acting under the color of *state* law (*i.e.*, those persons who may be named as defendants in a § 1983 action) generally lack the capacity to violate the Seventh Amendment. *See Kampfer v. Argotsinger*, 2020 WL 906274 at *10 (N.D.N.Y. Feb. 25, 2020) (The Seventh Amendment does not "provide a […] cause of action cognizable under § 1983." (citation and quotation omitted)). Because defendants, in this case, had no control over plaintiff's ability to demand a jury trial in any federal lawsuit, they could not possibly have violated his Seventh Amendment rights.

### 5. Ninth Amendment Claims

Plaintiff also contends that defendants violated his Ninth Amendment rights. ECF No. 36, ¶¶ 54-59. The Ninth Amendment provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. This Amendment "is not an independent source of individual rights" insomuch as it is a "rule of construction that [courts] apply in certain cases." *Jenkins v. C.I.R.*, 483 F.3d 90, 92 (2007). Thus, "the Ninth Amendment cannot serve as the basis for a section 1983 claim." *Salaman v. DeJesus*, 3:05-cv-1608 (JBA), 2008 WL 160592, at *3 (D. Conn. Jan. 15, 2008).

### 6. Breach of Contract Claims

In addition to his constitutional claims, plaintiff contends that defendants are in breach of contract. ECF No. 36 at 15-16. While it isn't entirely clear what contract, or contracts, plaintiff alleges to have been breached, his proposed complaint does mention an "agreement" into which he entered with Commissioner Quiros and Warden Cotta when he was first admitted into penal

custody. ECF No. 36, ¶ 46. By the terms of this purported agreement, the parties stipulated that plaintiff would not be disciplined unless he violated Administrative Directives. *Id*.

The above-noted agreement could not possibly support a breach of contract claim. Assuming plaintiff explicitly or implicitly promised to obey prison rules, this hardly created the obligation for him to do so. Prisoners are always required to follow prison rules. Since plaintiff, at most, promised to perform a pre-existing legal duty, his purported agreement with Warden Quiros and Warden Cotta is not legally enforceable. *See Gianetti v. Norwalk Hosp.* 211 Conn. 51, 61 (1989) ("[I]n the absence of consideration an executory promise is unenforceable." A promise "to perform what [a party] already had the pre-existing legal duty to do [does] not constitute valid consideration.")

Having reviewed plaintiff's proposed complaint, this Court discerns no other alleged agreement which could give rise to a legally enforceable contract. Thus, plaintiff has not pled any viable breach of contract claims.

### 7. Obstruction of Grievance Process and Delay in Receipt of Court Filing Claims

The above-noted causes of action each relate to alleged incidents covered by the currently operative complaint. But, in his proposed amended complaint, plaintiff also asserts causes of actions flowing from newly alleged misconduct. Specifically, plaintiff alleges: (1) that defendants obstructed his ability to receive redress through the filing of administrative grievances; and (2) that, *after he filed a complaint in this case*, Officer Torres "[c]ontinuously hindered and/or delayed plaintiff[] from receiving E-files." ECF No. 36, ¶¶ 45, 52, 58-59.

Plaintiff's first claim lacks any potential merit. "[A]llegations that a prison official violated the procedures set forth in a state's administrative remedy program that is applicable to prisoner grievances do not state a claim of a violation of an inmate's constitutional rights." *Baltas*

*v. Erfe*, 3:19-cv-1820, 2020 WL 1915017, at *33 (April 20, 2020). With this noted, any alleged obstruction of the administrative grievance process would be relevant only to any affirmative defenses raised by defendants that are premised on plaintiff's failure to exhaust administrative remedies. *See* 42 U.S. § 1997e(a) (requiring prisoners to exhaust administrative remedies only to the extent that the remedies are available).

Plaintiff's second claim—that Officer Torres delayed his access to court filings—does implicate a potential First Amendment access to the courts claim. *See Miller v. Semple*, 3:18-cv-1769, 2019 WL 6307535, at *4 (D. Conn. Nov. 25, 2019) ("Prisoners have a [First Amendment] constitutional right of access to the courts that may not be unreasonably obstructed by the actions of prison officials.") But since plaintiff's proposed complaint does not allege any injury caused by his delayed access to court filings, it is doubtful that he has adequately alleged a First Amendment cause of action. *See id.* ("To state a claim for denial of access to the courts, a plaintiff must demonstrate that he suffered an actual injury.")

Perhaps more problematic to plaintiff's access to the courts claim, this Court views it as only tenuously related to the other claims litigated in this action. Thus, this Court would not be inclined to permit permissive joinder. *See* Fed. R. Civ. Pro. 20(a)(2)(A); *see also*, *Webb v. Aldonaldo*, 3:13-cv-144 (RNC), 2013 WL 3243135, at *3 (D. Conn. June 26, 2013) (permissive joinder inappropriate when claims within a complaint "are wholly unrelated.") So, in the context of this action, plaintiff has not pled any viable claims related to the obstruction of grievance process or delayed access to court filings.

B.	Newly Added and Re-Added Parties

1.	Newly Added Parties

Plaintiff's proposed complaint would add the following parties to this action: Commissioner Quiros, Warden Cotta, Warden Barone, Warden Reis, Correctional Officer Torres, Counselor Ferrera, Captain Faucher, and Administrative Remedy Coordinator (ARC) Collins. *Id.* at 2-6. Since these newly named defendants were, at most, only peripherally involved in the events giving rise to the First and Fourteenth Amendment claims which have survived initial review, plaintiff cannot effectually add them as parties to this action.

"It is well settled in [the Second] Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Mere involvement in a stream of events culminating in a violation of rights won't suffice to create § 1983 liability. Rather, a plaintiff must show "direct involvement" evidencing "intentional participation in the conduct constituting a violation of the [plaintiff's] rights." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001). In this vein, supervisory officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). If a supervising official is to be held liable for violations of a defendant's constitutional rights, it must be "through the official's own individual actions." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

Plaintiff's newly raised claims against high-ranking prison officials—Commissioner Quiros, Warden Cotta, Warden Barone, and Warden Reis—appear to be largely premised on a theory of *respondeat superior* liability. Aside from not responding to plaintiff's complaint letters,

Commissioner Quiros, Warden Barone, and Warden Reis had no apparent role in the alleged violations of plaintiff's constitutional rights. ECF No. 36, ¶¶ 48-49, 51.

Plaintiff does allege that Warden Cotta sent him correspondence, on at least one occasion, regarding the preservation of video evidence. *Id.*, ¶ 50. But this limited communication establishes only peripheral involvement in the matters of this case. And, more to the point, plaintiff's pleading does not suggests that Warden Cotta somehow violated plaintiff's constitutional rights through this correspondence.

In stating causes of action against high-ranking prison officials, plaintiff does allege that they "conspired" with subordinates to violate his constitutional rights. *Id.*, ¶¶ 57, 59. But this purported conspiracy isn't supported by any facts alleged in the narrative of plaintiff's proposed complaint. And threadbare allegations of a conspiracy won't permit § 1983 claims to survive initial judicial review. *See Ciambriello v. County of Nassau*, 292 F. 3d 307, 325 (2d Cir. 2002) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed." (citation omitted)). Accordingly, this Court finds that plaintiff has not alleged viable claims against Commissioner Quiros, Warden Cotta, Warden Barone, or Warden Reis.

With respect to Officer Torres, plaintiff may have adequately alleged his direct involvement in an alleged violation of his rights. Plaintiff contends, albeit conclusorily, that Officer Torres has affirmatively hindered his access to court filings made in this case. ECF No. 36, ¶ 52. But this Court has determined that the cause of action alleged related to this conduct fails for lack of facts showing injury and should not in any event be joined to this case. Thus, this Court finds that plaintiff has alleged no viable claims against Officer Torres.

With respect to Captain Faucher, plaintiff alleges only that this official responded to a request for the preservation of video footage without referencing a tracking number. *Id.* at ¶ 39. Responding to a request to preserve evidence, and possibly forgetting to reference a tracking number, is not a constitutional transgression.

As far as one can tell from plaintiff's proposed complaint, Counselor Ferrera's only involvement in this case was to be present at a meeting in which Counselor Jones recommended that plaintiff admit guilt to a disciplinary infraction. *Id.* at ¶ 31. Counselor Ferrera's fleeting proximity to Counselor Jones is not constitutionally objectionable.

The final defendant whom plaintiff seeks to add to this suit, ARC Collins, denied administrative grievances in which plaintiff sought redress for matters currently litigated in this action. Id. at ¶¶ 17(c), 45, 59. Since the denial of a grievance *after* a constitutional violation has already occurred generally doesn't constitute "personal involvement" in said constitutional violation, s*ee Jordan v. Gifford*, 19-cv-1628 (CSH), 2022 WL 3106965, *26 (D. Conn. Aug. 4, 2022), plaintiff cannot effectually add ARC Collins as a party to this action either.

As with the supervisory defendants, plaintiff attempts to strengthen his claims against defendants Faucher, Ferrera, and Collins through a vague allegation that they acted within the scope of a broader conspiracy. ECF No. 36, ¶¶ 56-57. But, again, a threadbare allegation of conspiracy won't suffice to establish a defendant's personal participation in a violation of constitutional rights. *See Ciambriello*, 292 F. 3d at 325. Thus, plaintiff has failed to adequately plead claims against any of the newly named defendants.

### 2. Re-Added Parties

Plaintiff also seeks to reinstate parties previously dismissed by this Court's IRO. Specifically, plaintiff seeks to reinstate Lieutenant Brown and Chaplain Bayramoglu. ECF No.

36, ¶¶ 11, 16.[4] Plaintiff also re-endeavors to sue all named defendants in their *official* capacities. *Id.*, at 1.

In its IRO, this Court dismissed a First Amendment retaliation claim against Lieutenant Brown because plaintiff had not alleged any contact with her following the filing of a March 12, 2021 grievance (the speech that purportedly provoked adverse action). ECF No. 11 at 12. Perhaps attempting to shore up this pleading deficiency, plaintiff now specifically alleges that he spoke to Lieutenant Brown on March 12, 2021. ECF No. 36, ¶ 43. But plaintiff's proposed complaint makes literally no other allegations pertaining to Lieutenant Brown. And since mere conversation does not offend the Constitution, plaintiff's amended complaint would not effectually reinstate Lieutenant Brown as a party to this action.

In its IRO, this Court dismissed Chaplain Bayramoglu from this action because plaintiff offered no explanation as to how this defendant might have violated his rights. ECF No. 11 at 22. Plaintiff's proposed complaint does offer some, limited insight on this matter. In passing, the proposed complaint notes that Chaplain Bayramoglu was a witness at plaintiff's disciplinary hearing. ECF No. 36, ¶ 35. Nothing more, though, is alleged with respect to Chaplain Bayramlogu. Absent any specific allegation of wrongdoing, plaintiff's proposed complaint cannot effectually reinstate Chaplain Bayramoglu as a party to this action.

In addition to seeking reinstatement of previously dismissed parties, plaintiff's proposed complaint also seeks to reinstate causes of action against defendants in their official capacities. *Id.*, at 1. But for reasons already explained in this Court's IRO, sovereign immunity principles preclude plaintiff from suing defendants for monetary damages in their official capacities. *See* ECF No. 11 at 6.

---

[4] Lieutenant Brown and Chaplain Bayramoglu are referred to as Disciplinary Hearing Officer Brown and Correctional Officer Bayramoglu in this Court's IRO. ECF No. 11, at 1.

Beyond monetary damages, plaintiff's proposed complaint does seek a judicial acknowledgment that his constitutional rights were violated and an injunction of a nature "to be determined at a later date." ECF No. 36, ¶¶ 61-62. But this Court cannot permit a § 1983 claim to proceed against a defendant when a plaintiff seeks only "a declaration that there was a past injury." *Teichmann v. New York*, 769 F.3d 821, 826 (2014). And plaintiff has specifically requested injunctive relief against Commissioner Quiros and Warden Cotta, parties against whom this Court has determined plaintiff has no causes of action. Thus, plaintiff has not requested any relief that would permit his claims to move forward against defendants in their official capacities.

In sum, plaintiff's proposed complaint could not effectually reinstate claims against previously dismissed defendants or permit him to proceed against current defendants in their official capacities.

## Conclusion

Plaintiff's proposed amended complaint **[ECF No. 36]** would be futile in adding a single claim to this action. Accordingly, this Court **denies** plaintiff leave to amend his complaint. Plaintiff's first amended complaint **[ECF No. 10]** shall continue to serve as this action's operative complaint.

**SO ORDERED** at Hartford, Connecticut, this 30th day of September 2022.

/s/
Michael P. Shea, U.S.D.J.