UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
TOMMY MEJIA,                                      :
                                                  :
                          Plaintiff,              :
                                                  :
                                                  :   **MEMORANDUM &**
         -against-                                :   **ORDER**
                                                  :
KURTZENACKER, *et al.*,                           :   21-CV-1222 (VDO)
                                                  :
                          Defendants.             :
------------------------------------------------------------------ x

**VERNON D. OLIVER**, United States District Judge:

**I.     INTRODUCTION**

The plaintiff, Tommy Mejia, filed this action against Department of Correction officials asserting claims for violation of his constitutional rights in connection with the denial of a chair and disciplinary action for contraband found in his cell. The remaining defendants, Kurtzenacker, Bomster, Perkins, Schweighoffer,[1] Tramontano, and Vicenty, have filed a motion for summary judgment on the grounds that the plaintiff failed to exhaust his administrative remedies before commencing this action, the plaintiff fails to state cognizable claims for relief, and the defendants are protected by qualified immunity. Although over three months have passed since the response date, the plaintiff has not responded to the motion for summary judgment. For the following reasons, the defendants' motion is granted.

---

[1] Counsel informs the Court that the plaintiff spelled defendant Schweighoffer's name incorrectly in the Complaint. The Court uses the correct spelling here. Although the plaintiff spelled defendant Kurtzenacker's name incorrectly in the original complaint, he corrected the spelling in the amended complaint. The Clerk is requested to correct the spelling in the case caption.

## II.     STANDARD

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"  *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Which facts are material is determined by the substantive law.  *Anderson*, 477 U.S. at 248.  "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense …."  *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the non-moving party must set forth specific facts showing that there is a genuine issue for trial.  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  He cannot "rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted).  To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor.  *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801

F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## III. FACTS[2]

At all times relevant to this action, the plaintiff was a sentenced inmate confined in A-Dorm at Brooklyn Correctional Institution ("Brooklyn"). Defs.' Local Rule 56(a)1 Statement, ECF No. 68-2, ¶ 1. During this same time, defendants Kurtzenacker, Perkins, and Bomster were correctional officers, defendant Schweighoffer was a lieutenant, defendant Tramontano was a correctional counselor, and defendant Vincenty was a lieutenant and disciplinary hearing officer ("DHO"), all of whom worked at Brooklyn. *Id.* ¶¶ 2-7.

In the morning of March 11, 2021, prison officials moved the plaintiff and all other inmates in A-dorm to the gym.[3] Initial Review Order, ECF No. 11 at 2. There were more

---

[2] The facts are taken from the defendants' Local Rule 56(a)1 Statement and supporting exhibits. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3.

Although the defendants informed the plaintiff of this requirement, *see* ECF No. 68-3, the plaintiff has not filed a Local Rule 56(a)2 Statement. Nor has he responded to the motion for summary judgment in any way. Accordingly, the defendants' statements that are not contradicted by admissible evidence of record are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)3 ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1, or in the Court imposing sanctions....").

[3] Although the defendants describe the statement of facts in their memorandum as a summary of their Local Rule 56(a)1 Statement, they include additional information, such as the date of the incident and the reason inmates were moved to the gymnasium, that is not contained in the Local Rule 56(a)1 Statement.

inmates than chairs in the gym and many inmates were sitting on mattresses or the floor. ECF No. 68-2 ¶¶ 9-10. Officer Kurtzenacker was stationed at the door to keep a count of the inmates entering the gym to ensure that all inmates were present. *Id.* ¶ 11. The plaintiff approached Officer Kurtzenacker and asked for a chair. *Id.* ¶ 13. Officer Kurtzenacker could not leave his post without a replacement and told the plaintiff that he could not get him a chair. *Id.* ¶ 13. The plaintiff then raised his voice. *Id.* ¶ 14. Officer Kurtzenacker perceived this behavior as argumentative and disruptive, and considered the plaintiff's loudly demanding a chair and to speak to a supervisor to be grandstanding. *Id.* ¶ 15. As a result, Officer Kurtzenacker had the plaintiff moved to a holding cell in the A/P area. *Id.*

Moving an inmate to a holding cell was the standard practice at that time when an inmate demanded to speak to a supervisor. *Id.* ¶ 16. Lieutenant Schweighoffer, the supervisor, was not present in the gym at the time of the incident and was not informed of the incident until after the plaintiff has been moved to the holding cell. *Id.* ¶ 17. Based on Officer Kurtzenacker's description of the incident, Lieutenant Schweighoffer agreed that the plaintiff was grandstanding in front of the other inmates. *Id.* ¶ 18. Correctional staff view grandstanding as unacceptable behavior because it can lead to incitement of the inmates. *Id.* ¶ 19.

After speaking to the plaintiff to hear his version of events, Lieutenant Schweighoffer decided that the plaintiff should not return to the gym because he could continue to grandstand and cause a greater disruption. *Id.* ¶¶ 20-21. The plaintiff remained in the holding cell, where he slept on a bunk, until he returned to his housing unit later in the day. *Id.* ¶¶ 21-22.

While the plaintiff was in the holding cell on March 11, 2021, Officer Perkins conducted a shakedown, or search for contraband, of the plaintiff's bunk and locker. Perkins

Decl., ECF No. 68-7 ¶ 4. When the plaintiff acknowledged that he owned unauthorized items found during the search, Officer Perkins issued the plaintiff a disciplinary report for possession of contraband. *Id.* ¶ 6.

Officer Bomster was the disciplinary investigator. ECF No. 68-2 ¶¶ 51-53. After interviewing the plaintiff, obtaining statements from Officer Perkins and the chaplain, and reviewing surveillance footage, Officer Bomster concluded there was sufficient evidence to support the charge of possession of contraband. *Id.* Officer Bomster met with the plaintiff and offered reduced sanctions if the plaintiff pleaded guilty to the charge. *Id.* ¶ 54. Officer Perkins also spoke to the plaintiff and recommended that he plead guilty and accept reduced sanctions; he did not threaten the plaintiff with additional searches or disciplinary charges. ECF No. 68-7 ¶¶ 7-10; ECF No. 68-2 ¶¶ 25-26. The plaintiff declined the offer and proceeded to a hearing at which Officer Bomster recommended a guilty finding. ECF No. 68-2 ¶ 57. Officer Bomster did not know that the plaintiff allegedly had named him in grievances filed on March 11, 2021, and March 12, 2021. *Id.* ¶¶ 56.

Counselor Tramontano was the plaintiff's advisor at the April 14, 2021 disciplinary hearing before DHO Vicenty. *Id.* ¶¶ 30-31. An advisor is not an advocate; he merely assists the inmate to ensure the inmate can obtain evidence he wishes to present in his defense. *Id.* ¶ 32. Counselor Tramontano met with the plaintiff on March 19, 2021 and March 23, 2021 to advise the plaintiff about the hearing process and review the disciplinary charge and evidence with him. *Id.* ¶¶ 33-35. Counselor Tramontano prepared a report setting forth the plaintiff's version of events, statements from three inmate witnesses were obtained, and surveillance footage was preserved. *Id.* ¶¶ 36-38.

At the hearing, the plaintiff did not dispute that he owned the contraband found in his bunk and locker. *Id.* ¶ 44. DHO Vicenty found the plaintiff guilty of the charge based on the plaintiff's admission and the results of Officer Bomster's investigation. *Id.* ¶ 45. Neither defendant Tramontano nor defendant Vicenty were aware, at any time prior to the hearing, that the plaintiff allegedly had filed grievances against them. *Id.* ¶ 46.

Grievance records at Brooklyn show that the plaintiff filed only one grievance, on March 16, 2021. *Id.* ¶ 64. That grievance was returned without disposition as the plaintiff failed to show that he had tried to resolve the matter informally and because he exceeded the maximum page allowance. *Id.* ¶ 65. The plaintiff conceded at his deposition, that he did not correct the deficiencies and refile this grievance. *Id.* ¶ 66.

There are no records of the March 11, 2021, March 12, 2021, and April 13, 2021 grievances the plaintiff alleges that he filed. *Id.* ¶ 67. Nor are there any records of timely grievance appeals for failure to respond to the initial grievances. *Id.* ¶¶ 68-69. The plaintiff did file grievance appeals for each of these three alleged grievances on July 21, 2021. *Id.* ¶ 70. All three appeals were denied as untimely filed and because there was no record of the underlying grievance. *Id.* The plaintiff conceded at his deposition that he was familiar with the grievance process and stated he had no recollection of attempting to informally resolve these issues. *Id.* ¶¶ 71, 73.

## IV.   DISCUSSION

The defendants move for summary judgment on three grounds, the plaintiff failed to exhaust his administrative remedies before commencing this action, the plaintiff fails to state cognizable claims for relief, and the defendants are protected by qualified immunity. As the

Court concludes below that the plaintiff failed to properly exhaust his administrative remedies, the Court addresses only the first ground for relief.

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies *before* a court may hear his case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion"; the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out and doing so properly"). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211.

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by ... making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy

procedures"); *Timmons v. Schriro*, No. 14-CV-6606 RJS, 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("The law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA.").

The Supreme Court has held that the requirement for proper exhaustion is not met when a grievance is not filed in accordance with the deadlines established by the administrative remedy policy. *Jones*, 549 U.S. at 217-18 (citing *Woodford*, 548 U.S. at 93-95). In addition, exhaustion of administrative remedies must be completed before the inmate files suit. *Baez v. Kahanowicz*, 278 F. App'x 27, 29 (2d Cir. 2008). Completing the exhaustion process after the complaint is filed does not satisfy the exhaustion requirement. *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001).

Special circumstances will not relieve an inmate of his obligation to comply with the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross*, 578 U.S. at 642. The Supreme Court has determined that "availability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (quotation marks and internal citations omitted).

The *Ross* Court identifies three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 643-44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 643. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Finally, an administrative remedy is not "available" when "prison administrators thwart

inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643.  The Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016).  In considering the issue of availability, however, the court is guided by these illustrations. *See Mena v. City of New York*, No. 13-CV-2430(RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Exhaustion of administrative remedies is an affirmative defense.  Thus, the defendants bear the burden of proof.  *See Jones*, 549 U.S. at 216.  Once the defendants establish that administrative remedies were not exhausted before the inmate commenced the action, the plaintiff must establish that administrative remedy procedures were not available to him under *Ross*, or present evidence showing that he did exhaust his administrative remedies. *See Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) ("once a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability").

The general inmate grievance procedure is set forth in Administrative Directive 9.6.  *See* Defs.' Mem. Ex. G, ECF No. 68-18 (version of Directive 9.6 in effect at the time of the underlying incident).  An inmate must first attempt to resolve the matter informally.  He may attempt to verbally resolve the issue with an appropriate staff member or supervisor.  Dir. 9.6(6)(A).  If attempts to resolve the matter verbally are not effective, the inmate must make a written attempt using a specified form and send the form to the appropriate staff member or supervisor.  *Id.*  If an inmate does not receive a response to the written request within fifteen

business days, or the inmate is not satisfied with the response to his request, he may file a Level 1 grievance. Dir. 9.6(6)(C).

The Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. *Id.* The Unit Administrator shall respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. Dir. 9.6(6)(I). The Unit Administrator may extend the response time by up to fifteen business days upon notice to the inmate on the prescribed form. Dir. 9.6(6)(J).

The inmate may appeal the disposition of the Level 1 grievance by the Unit Administrator, or the Unit Administrator's failure to dispose of the grievance in a timely manner, to Level 2. The Level 2 appeal of a disposition of a Level 1 grievance must be filed within five calendar days from the inmate's receipt of the decision on the Level 1 grievance. The Level 2 appeal of the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner must be filed within sixty-five days from the date the Level 1 grievance was filed by the inmate and is decided by the District Administrator. Dir. 9.6(6)(K) & (M).

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure, or Level 2 appeals to which there has been an untimely response by the District Administrator. Dir. 9.6(6)(L).

The plaintiff alleges that he filed grievances on the remaining claims on March 11, 2021, March 12, 2021, and April 13, 2021, but received no responses. He does not explain how he could have submitted written inmate requests to attempt to resolve the issues informally, received responses, and filed his grievances all on the same day as the underlying

incidents. Further, in accordance with the grievance procedures, when an inmate fails to receive a timely response to his initial grievance, he must file a grievance appeal within sixty-five days from the date he submitted the initial grievance. The plaintiff's grievance appeals on these claims had to be filed by May 15, 2021, May 16, 2021, and June 17, 2021, respectively.

The defendants have submitted the Declaration of Kendra Collins, the Administrative Remedies Coordinator at Brooklyn. ECF No. 68-5. She states that the administrative remedy records do not show that the plaintiff filed any grievances on the three alleged dates. *Id.* ¶ 8.

The plaintiff stated at his deposition that he filed grievance appeals of the three purported grievances on July 21, 2021. *See* Depo. Tr., ECF No. 68-11 at 29. Even assuming that the three initial grievances were properly filed, the plaintiff did not properly exhaust his administrative remedies because he did not file the grievance appeals within the time permitted in the directive.

In response to this evidence showing failure to properly exhaust administrative remedies, the plaintiff is required to show either that administrative remedies were not available to him or that he did exhaust his administrative remedies. The plaintiff has not done so. Accordingly, the defendants' motion for summary judgment is granted on the ground that the plaintiff failed to exhaust his administrative remedies on the remaining claim.

V.     **CONCLUSION**

The defendants' motion for summary judgment [**ECF No. 68**] is **GRANTED.** The plaintiff's motion for appointment of counsel [**ECF No. 67**] is **DENIED** as moot. The Clerk is directed to enter judgment and close this case.

**SO ORDERED.**

Hartford, Connecticut
December 5, 2023

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge